**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| VICTORIA ARENA, Individually, and as next of kin of I.R.A., a deceased minor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 5:24-cv-01248-D |
| TOYOTA MOTOR CORPORATION, a foreign corporation; TOYOTA MOTOR SALES, U.S.A., INC., a Texas corporation, and GRACO CHILDREN'S PRODUCTS, INC., a Delaware corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

**DEFENDANTS TOYOTA MOTOR CORPORATION AND TOYOTA MOTOR
SALES, U.S.A., INC.'S, RESPONSE IN OPPOSITION TO PLAINTIFF'S
OPENING MOTION AND BRIEF TO EXCLUDE CERTAIN OPINIONS
OF WILLIAM VAN ARSDELL, PH.D., P.E.**

---

Mary Quinn Cooper, OBA #11966
Andrew L. Richardson, OBA #16298
Katie G. Crane, OBA #34575
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000

Karl Viehman, Texas Bar No. 20579390
NELSON MULLINS RILEY & SCARBOROUGH LLP
5830 Granite Park, Suite 1000
Plano, Texas 75024
Telephone: (469) 484-6100

***Attorneys for Toyota Defendants***

May 29, 2026

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

FACTUAL BACKGROUND ..........................................................................................2

    A. The Subject Crash..........................................................................................2

    B. Dr. Van Arsdell's Education, Experience, and Specialized Knowledge...............2

    C. Dr. Van Arsdell's Methodology .........................................................................3

    D. The Rear-Facing Test ......................................................................................6

LEGAL STANDARD.....................................................................................................10

ARGUMENTS AND AUTHORITIES............................................................................11

I. The Court Should Deny the Motion Because Dr. Van Arsdell's Opinions Concerning IARVs Meet Rule 702's Requirements .................................................. 12

II. The Court Should Deny the Motion Because Dr. Van Arsdell's Opinions Concerning Effective Restraint Meet Rule 702's Requirements .............................. 16

III. The Court Should Deny the Motion Because Dr. Van Arsdell's Opinions Concerning Misuse Meet Rule 702's Requirements................................................21

CONCLUSION ...............................................................................................................23

**TABLE OF AUTHORITIES**

**Cases**

*Alnahhas v. Robert Bosch Tool Corp.,*
   No. CIV-13-178-D, 2018 WL 2293965 (W.D. Okla. May 18, 2018) ........................ 11

*Am. Fid. Assurance Co. v. Bank of New York Mellon*,
   No. CIV-11-1284-D, 2018 WL 11425415 (W.D. Okla. Mar. 9, 2018) ............... 13, 15

*Am. Fid. Assurance Co. v. Bank of New York Mellon,*
   No. CIV-11-1284-D, 2018 WL 11425413 (W.D. Okla. Feb. 28, 2018) .............. 13, 14

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ..................................................................................... 10

*Ribeiro v. Baby Trend, Inc.*,
   2017 WL 1380509 (D. Neb. Apr. 17, 2017) ................................................... 1

*Vanlandingham v. City of Oklahoma City,*
   No. CIV-22-209-D, 2026 WL 767469 (W.D. Okla. Mar. 18, 2026) ........................ 10

**Statutes, Rules, and Regulations**

Fed. R. Evid. 702 ..................................................................................... passim

49 C.F.R. § 571.213 ..................................................................................... 7

47 O.S. § 11.1112 ..................................................................................... 4

**GLOSSARY**

| Term | Definition |
|---|---|
| ATD | Anthropomorphic Test Device, or a crash test dummy, utilized in crash and sled tests to evaluate occupant kinematics and to assess injuries. *See* Ex. 1, Van Arsdell Decl., ¶ 8. |
| CRS | Child restraint system, it is the industry term for an automotive car seat. *See id.* ¶ 5. |
| FMVSS | Federal Motor Vehicle Safety Standard, the safety regulations promulgated by NHTSA with which vehicle and equipment manufacturers must comply.  *See* 49 CFR § 571 *et seq.* |
| HIC | Head Injury Criteria, or a measure used in testing to estimate the likelihood and severity of head injury during a crash. *See* Ex. 1, Van Arsdell Decl., ¶ 10. |
| IARV | Injury Assessment Risk Value, biomechanical thresholds used to determine the likelihood of injury based on injury metrics obtained from instrumented ATDs in tests. *See id.* ¶ 11. |
| LATCH | Lower Anchors and Tethers for Children, it is mandated in vehicles manufactured after September 1, 2002 and includes lower anchors and top tether anchors to enhance safety and ease of installation for child restraint systems.  *See* 49 CFR §§ 571.213, 571.225. |
| NHTSA | National Highway Traffic Safety Administration, a federal agency responsible for keeping people safe on America's roadways through, *inter alia,* enforcement of FMVSS.  *See* https://www.nhtsa.gov/. |
| Sled test | A non-destructive automative engineering tool that simulates real-world crash conditions by accelerating a test carriage, or a sled, on a rail.  *See* Ex. 1, Van Arsdell Decl., ¶ 6. |

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota") file this Response in Opposition to Plaintiff's Opening Motion and Brief to Exclude Certain Opinions of William Van Arsdell, Ph.D., P.E., ECF No. 73 (the "Motion") filed by Plaintiff Victoria Arena, Individually and as next of kin of I.R.A., a deceased minor ("Plaintiff"), and state in support as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's Motion is all sizzle and no steak. Without providing any citation to peer-reviewed publications, scientific authorities, qualified expert analysis, or other datasets, Plaintiff asserts that injury assessment risk values derived from 30-mph tests cannot be applied to a test run at 49 mph. *See* Mot. at 8. Similarly, without any explanation or authority, Plaintiff posits that the crash test dummy used in Toyota's sled test – the very same test dummy endorsed by her own experts – understates injury metrics. *Id.* at 9. But simply stating these contentions doesn't make them true, and it especially doesn't make the opinions of Dr. Van Arsdell unreliable. Rather, Dr. Van Arsdell's report includes helpful opinions based upon his methodological review of evidence reliably applied to the facts of this case. The proper place, if any, for Plaintiff's uncited and unsupported arguments is cross-examination, not Rule 702. Accordingly, the Court should deny the Motion. *See Ribeiro v. Baby Trend, Inc.*, 2017 WL 1380509, at *4 (D. Neb. Apr. 17, 2017) (denying Rule 702 to exclude Dr. Van Arsdell where the plaintiffs criticized his methodology and his case-specific testing because "Dr. Van Arsdell reviewed sufficient facts and data and his

testimony is the product of reliable principles and methods" and "[t]he plaintiffs' challenge goes more to the weight than to the admissibility of the evidence").

## FACTUAL BACKGROUND

### A.    The Subject Crash

Toyota refers the Court to the Factual Background of its Motion for Summary Judgment, ECF No. 66, at 3-7, for a recitation of the facts of the April 21, 2024, crash (the "Subject Crash").

### B.    Dr. Van Arsdell's Education, Experience, and Specialized Knowledge

Dr. Van Arsdell is offering opinions about the Graco TrioGrow 3-in-1 child restraint system (the "Graco Seat") and the restraints, including the seat belts and attachments, in the 2021 Toyota Corolla (the "Corolla") in this case.  He is qualified to do so because he received his B.S. in Mechanical Engineering from the University of Arizona, his M.S. in Mechanical Engineering from the University of Illinois at Urbana-Champaign, and his Ph.D. in Mechanical Engineering from M.I.T.  *See* Ex. 2, Van Arsdell CV.  He is a registered Professional Engineer and Child Passenger Safety Technician.  *See id.*   He has published over 20 peer-reviewed papers on a variety of engineering topics, including but not limited to, the performance of child restraint systems in frontal and side impacts and the federal motor vehicle safety standards ("FMVSS") governing child occupant protection.  *See id.*

Dr. Van Arsdell has extensive experience evaluating the performance of seat belts, airbags, child restraint systems ("CRS"), and the crashworthiness of motor vehicles.  *See id.* at 1.  He has conducted over one hundred full-scale vehicle crash and sled tests.  *See id.* He has also evaluated and tested over one thousand seat belts and has investigated hundreds

2

of vehicle crashes  *See id.*  Since 2022, Dr. Van Arsdell has proffered expert testimony 33 times in cases in state and federal courts across the United States.  *See* Ex. 3, Van Arsdell Testimony History.

      C.     <u>Dr. Van Arsdell's Methodology</u>

Dr. Van Arsdell undertook a thorough review of the evidence in this case to come to his opinions.

First, he conducted a tactile, in-person inspection of the Subject Vehicle, its restraints,  and the subject Graco Seat, documenting the post-crash positions and evidence in the vehicle with photographs and measurements.  *See* Ex. 4, Van Arsdell Report, at 2.  In so doing, he deduced, for example, that Plaintiff did not attach the Graco Seat's top tether strap to the top tether anchor of the Corolla.  *See id.*  He also observed the stickers on the side of the Graco Seat, which instruct that a child between 5-40 pounds can ride rear facing and that, if the Graco Seat is installed forward facing, the top tether should be used.  *See id.* at 4-5.

Second, Dr. Van Arsdell reviewed the materials produced by the litigants in this case, particularly the Graco Seat and the Corolla's manuals.  *See id.* at 5.  He notes in his report that the Graco Seat's manual instructs that a child "22-40 pl (10-18 kg) **SHOULD** be rear-facing" and repeatedly warns that children "should ride rear-facing as long as possible, until they reach the maximum rear-facing height or weight rating for their car seat." *Id.* ¶ 8.  He also notes that the Corolla's manual's warning directs "users to read and follow the instructions provided by the child restraint manufacturer[.]" *See id.* ¶ 9.

Third, he undertook a review of the deposition testimony and witness statements in the case. *See id.* In his report, he includes the testimony most relevant to his opinions concerning the Graco Seat and restraints in the Corolla, *see id.* at 6-16, including Plaintiff's testimony that when I.R.A. turned two in October of 2023, she oriented the Graco Seat forward facing in her 2009 Honda Civic (the vehicle she was driving at the time) in reliance on the stickers on the side of the Graco Seat and an Oklahoma regulation that stated it "was legal for [her] to turn her forward." *See* Ex. 4, Van Arsdell Report, at 8; *see also* 47 O.S. § 11-1112(A)(1) ("A child under four (4) years of age shall be properly secured in a child passenger restraint system . . . . [T]he child passenger restraint system shall be rear-facing until the child reaches two (2) years of age or until the child reaches the weight or height limit of the rear-facing child passenger restraint system as allowed by the manufacturer of the child passenger restraint system, ***whichever occurs first***[.]" (emphasis added)).

Fourth, Dr. Van Arsdell performed a surrogate study in which a child of similar age, height, and weight to I.R.A. was placed in an exemplar Graco Seat in an exemplar Corolla:



*Figure 1*

4

Ex. 4, Van Arsdell Report, at 17-19. The study allowed him to understand how a child close in size to I.R.A. fit in the Graco Seat, and in turn, how the Graco Seat with a child fit in the Corolla both rear facing and forward facing.

Fifth, he consulted relevant FMVSS and the rulemaking submissions associated with them. *See id.* at 20-21. Dr. Van Arsdell notes in his report that the FMVSS relevant to vehicle manufactures, like Toyota, "make sure that the vehicle is compatible with child restraints" and require vehicle manufacturers to warn consumers that the "rear seat is the appropriate place to put children and CRS," but do not require a vehicle manufacturer to warn consumers how to use another manufacturer's product. *See id.* at 20.

Sixth, he reviewed the developmental and compliance testing of the Graco Seat produced by Graco. *See id.* at 22.

Seventh, he consulted other tests he has performed, including rear-facing sled-testing at Calspan showing that, even when rear-facing in a frontal crash, there can be forces associated with a risk of injury. *See id.* at 22.

Eighth, his firm, Engineering Principles, helped perform a sled test for this case to evaluate likely injury, if any, to a child of similar height and weight to I.R.A. if placed in a rear-facing exemplar Graco Seat and then subjected to the similar forces that I.R.A. was subjected to the in the Subject Crash. *Id.* at 22-25.

Ninth, he analyzed the testing relied upon by Plaintiff's experts in their analysis. *See id.* at 25-26.

Tenth, he referenced other sources, like data sets from NHTSA and peer-reviewed papers. *See generally id.* n.17-45.

And finally, he relied upon his extensive experience in the field of vehicle and child restraints, including but not limited to the fact that he has performed more than 100 crash and/or sled tests and evaluated the data therefrom to offer engineering-based opinions.

After reviewing all of those facts and data, he rendered opinions about the Graco Seat and the restraints in the Corolla.

D.    The Rear Facing Test

One of the pieces of evidence Dr. Van Arsdell relied upon in coming to his opinions was the sled test conducted by his firm at the Center for Advanced Product Evaluation ("CAPE") on April 1, 2026 (the "Rear-Facing Test"). A sled test is a non-destructive automative engineering tool that simulates real-world crash conditions by accelerating a test carriage, or a sled, on a rail. CAPE placed a Graco TrioGrow SnugLock 3-in-1 (the same model as the Graco Seat) in the right rear seat (the same position of the Graco Seat in the Subject Crash) of the Corolla buck (the same year and model as that driven by Plaintiff):



*Figure 2*

6

But instead of placing the Graco Seat forward facing, as it was oriented in the Subject Crash, Engineering Principles directed that CAPE place it rear facing. The test simulated the Subject Crash almost exactly—including its delta-V, principal direction of force, and pulse—and its purpose was to evaluate potential injury to a rear-facing child of similar age, height, and weight to I.R.A. if subjected to the forces like those I.R.A. was subjected to in the Subject Crash. *See* Ex. 1, Van Arsdell Decl., ¶ 13.

An ATD, known colloquially as a crash test dummy, is meant to simulate human body responses during a crash. *Id.* ¶ 8. No ATD exists that exactly matches I.R.A.'s anthropometry, or her height and weight, at the time of Subject Crash. *Id.* ¶ 14. Dr. Van Arsdell compared I.R.A.'s height and weight to that of the closest-in-size ATDs routinely used in standardized testing in the United States, illustrated by the below chart:

|  | Height (in.) | Weight (lbs.) |
| --- | --- | --- |
| 18-month-old ATD | 32 | 24.7 |
| I.R.A. | 35 | 26.5 |
| 3YO Hybrid III ATD | 37 | 36 |

*Figure 3*

*Id.* ¶ 15. Based on this analysis, Dr. Van Arsdell directed that a Hybrid III three-year-old ATD (the "3YO Hybrid III ATD"), the same ATD required by the National Highway Traffic Safety Association ("NHTSA") for Federal Motor Vehicle Safety Standard ("FMVSS") 213[1] compliance testing, be used:

---

[1] FMVSS 213 is the regulation promulgated by NHTSA that establishes performance standards for child restraint systems. *See* 49 CFR § 571.213.



*Figure 4*

The 3YO Hybrid III ATD is a carefully developed and proven test device. *See* Ex. 1, Van Arsdell Decl., ¶ 19. Researchers, engineers, and other experts developed and researched the 3YO Hybrid III ATD extensively before its introduction in the FMVSS. *See id.* For the past 25 years, the 3YO Hybrid III ATD has been continually used by automotive manufacturers, CRS manufacturers, government agencies, contractors, academics, and experts such as Dr. Van Arsdell. *See id.* Dr. Van Arsdell's choice of the 3YO Hybrid III ATD was also supported by Plaintiff's own biomechanic's opinion that "I.A.'s anthropometric measurements were closest to a 3-year-old [ATD]." *See* ECF No. 66-16, Hoffman Report, at 75; *see also* Ex. 5, Sicher Rebuttal Report, at 4 (stating that a Hybrid III ATD "more accurately represented IA's anthropometry" than Graco's choice of a Q1.5 ATD for its test).

For the test, the 3YO Hybrid III ATD was instrumented, meaning it was equipped with a network of internal sensors, transducers, and data acquisitions systems that measure physical forces and motions during a simulated crash. *See* Ex. 1, Van Arsdell Decl., ¶ 8. Those measurements are converted to injury metrics, which engineering experts like Dr.

Van Arsdell can then compare to Injury Assessment Reference Values, or IARVs. IARVs are routinely relied upon in the automotive safety field. *See id.* ¶ 11. For example, Plaintiff's biomechanic, Michelle Hoffman, relies upon a sled test conducted by ARCCA in February 2023 utilizing an 12MO CRABI ATD weighing approximately 22 pounds and 29 inches tall, and the injury metrics obtained from that test that did and did not exceed IARVs, to opine that a "rear-facing orientation would have eliminated any serious injury" to I.R.A. *See* ECF No. 66-16, Hoffman Report, at 83.

Below is a chart showing the injury metrics obtained from the Rear-Facing Test:

**CAPE** — Center for Advanced Product Evaluation
18881 IMMI Way, Westfield IN 46074
(317) 867-8225
www.capetesting.com

Test ID: CTR21720-001  Title: C24 HIII3C SUMMARY
Test Date: 1-Apr-2026  Comment:
ATD Position: Rear Passenger

| Description | Units | Min. | ms | Max. | ms | Description | Units | Min. | ms | Max. | ms |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Head X | g | -8.5 | 131 | 102.4 | 64 | Nce | | | | 0.18 | 57 |
| Head Y | g | -74.2 | 92 | 30.1 | 61 | Ncf | | | | 0.18 | 117 |
| Head Z | g | -13.7 | 111 | 49.0 | 85 | | | | | | |
| Head Resultant | g | | | 105.3 | 64 | | | | | | |
| HIC36 | | | | 1180.0 | | | | | | | |
| HIC15 | | | | 652.4 | | | | | | | |
| Chest X | g | -5.9 | 245 | 61.2 | 64 | | | | | | |
| Chest Y | g | -20.6 | 69 | 5.4 | 90 | | | | | | |
| Chest Z | g | -8.8 | 114 | 59.1 | 62 | | | | | | |
| Chest Resultant | g | | | 84.9 | 63 | | | | | | |
| Chest 3ms Clip | | | | 82.4 | | | | | | | |
| Chest Deflection | mm | -6.9 | 68 | 0.0 | 9 | | | | | | |
| Upper Neck FX | N | -370.2 | 61 | 59.0 | 104 | | | | | | |
| Upper Neck FY | N | -335.4 | 92 | 192.9 | 65 | | | | | | |
| Upper Neck FZ | N | -184.8 | 116 | 1690.7 | 86 | | | | | | |
| Upper Neck Mocx | N-m | -11.9 | 123 | 9.5 | 151 | | | | | | |
| Upper Neck Mocy | N-m | -14.0 | 61 | 8.4 | 123 | | | | | | |
| Upper Neck MZ | N-m | -13.7 | 95 | 3.3 | 185 | | | | | | |
| Nte | | | | 1.00 | 86 | | | | | | |
| Ntf | | | | 0.17 | 144 | | | | | | |

*Figure 5*

*See* Ex. 1, Van Arsdell Decl., ¶ 20. Comparing these injury metrics to their respective IARVs, Dr. Van Arsdell opined that "I.A. was likely to be exposed to forces above the

injury assessment reference values (IARVs), whether she was installed rear-facing or forward-facing." *See* Ex. 4, Van Arsdell Report, ¶ 39.

## LEGAL STANDARD

The admission of expert evidence is governed by Rule 702, as explained by *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), and its progeny. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court performs a two-step analysis to determine whether an expert's opinion is admissible. Relevant to Plaintiff's Motion is the second step, where the Court must "determine whether the expert's opinion is reliable under the principles set forth in *Daubert.*" *Vanlandingham v. City of Oklahoma City,* No. CIV-22-209-D, 2026 WL 767469, at *1–2 (W.D. Okla. Mar. 18, 2026) (internal quotations and citation omitted). To determine whether an expert's opinion is reliable, a court can consider, *inter alia,* "whether the expert's technique or theory can be or has been tested-that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability." 2000

10

Advisory Committee Notes to Rule 702. "In order to establish an expert's testimony as reliable, the proponent need not prove the expert is indisputably correct; rather, the party must show the method employed by the expert in reaching his conclusion is sound and the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Alnahhas v. Robert Bosch Tool Corp.,* No. CIV-13-178-D, 2018 WL 2293965, at *5 (W.D. Okla. May 18, 2018) (internal citations omitted).

## ARGUMENTS AND AUTHORITIES

Plaintiff seeks to exclude[2] three categories of opinions from Dr. Van Arsdell: (1) his IARV opinions, *see, e.g.,* Ex. 4, Van Arsdell Report, ¶ 39 ("Based upon the severity of the subject crash, I.A. was likely to be exposed to forces above the injury assessment reference values (IARVs), whether she was installed rear-facing or forward-facing."); (2) his effective restraint opinions, *see, e.g., id.* ¶ 64 (". . . I.A.'s size falls in both the forward-facing size range and the rear facing size range for the TrioGrow; either orientation would afford proper protection."); and (3) his misuse opinions, *see, e.g., id.* ¶ 40 ("The subject CRS was installed without a tether, in violation of both the Toyota owner's manual and the CRS instruction manual."). The Court should deny Plaintiff's Motion because these opinions will assist the trier of fact and were reliably derived from the evidence in this case.

---

[2] On May 20, 2026, Plaintiff filed a Notice of Withdrawal and Partial Withdrawal of Certain Rule 702 Motion Arguments. *See* ECF No. 89. Included in that withdrawal was Plaintiff's withdrawal of "Section I of her Rule 702 Motion to Exclude Certain Opinions of Dr. Van Arsdell, appearing at pages 6 through the first full paragraph of page 8 of ECF No. 73[.]" *See id.* ¶ 3. Therefore with this Response, Toyota does not address any of Plaintiff's withdrawn arguments concerning her mistaken assertion that the Subject Crash's pulse duration was 170 or 171 milliseconds.

**I.   The Court Should Deny the Motion Because Dr. Van Arsdell's Opinions Concerning IARVs Meet Rule 702's Requirements**

Plaintiff argues that Dr. Van Arsdell's opinion that "I.A. was likely to be exposed to forces above the [IARVs] whether she was installed rear-facing or forward-facing," *see id.* ¶ 39, will not assist the trier of fact and/or is unreliable.  But Plaintiff's criticisms about the speed at which IARVs are derived or the size of the ATD used in the Rear-Facing Test go to the weight of Dr. Van Ardell's opinions and not their admissibility, necessitating denial.

Dr. Van Arsdell's opinion about IARVs is helpful, Fed. R. Evid. 702(a), as testimony concerning injury metrics derived from a test mimicking the conditions of the Subject Crash will help the jury resolve the factual dispute between the Parties regarding I.R.A.'s injury risk had the Graco Seat been placed rear-facing during the Subject Crash.  Dr. Van Arsdell's opinion is based on sufficient facts and data, *see* Fed. R. Evid. 702(b), because as stated *supra,* Dr. Van Arsdell underwent a systematic and scientific review of evidence, including his review of the physical evidence, testimony, testing conducted not for this case, and testing conducted for this case, before opining that I.R.A. would have been exposed to forces above certain IARVs if the Graco Seat had been placed rearward in the Corolla.

Dr. Van Arsdell's opinions are the product of reliable principles and methods, *see* Fed. R. Evid. 702(c), because he took the data from the Rear-Facing Test and compared it to well-established IARVs.  As is made clear by the thematic underpinning of Plaintiff's Rule 702 motion practice: Plaintiff doesn't like the Rear-Facing Test.  *See generally* ECF Nos. 69 and 72.  Plaintiff disagrees with the pulse duration and Toyota's use of the 3YO

Hybrid III ATD and the injury metrics obtained therefrom.  But none of those critiques speak to the reliability of Dr. Van Arsdell's methods.  From the Rear-Facing Test, Dr. Van Arsdell analyzed the injury metrics obtained from the instrumented 3YO Hybrid III ATD. *See supra* Figure 5; *see also* Ex. 4, Van Arsdell Report, at 25.  Dr. Van Arsdell then compared these injury metrics to their associated IARVs and opined that some of the injury metrics exceeded IARVs.  *Id.*  That's it.  That's the opinion Plaintiff seeks to exclude.  But his method is reliable because IARVs are routinely used by engineering experts, including by Ms. Hoffman in this very case.  *See* ECF No. 66-16, Hoffman Report, at 83.

Lastly, Dr. Van Arsdell's opinion concerning IARVs was reached by his reliable application of principles and methods to the facts of this case.  *See* Fed. R. Evid. 702(d). If Plaintiff so wanted, she could recreate his methodology entirely: first, he helped conduct a test that simulated the forces acting on the Corolla during the Subject Crash; second, he analyzed the injury metrics obtained from the 3YO Hybrid III ATD; and third, he compared it to IARVs.  There are thus "good grounds" for his opinion, satisfying Rule 702's last prong.  *See  Am. Fid. Assurance Co. v. Bank of New York Mellon*, No. CIV-11-1284-D, 2018 WL 11425415, at *3 (W.D. Okla. Mar. 9, 2018) (internal citations omitted).

Plaintiff first argues that the IARV thresholds relied upon by Dr. Van Arsdell were calibrated for 30 mph testing, and because the Rear-Facing Test was run with a 49-mph delta-V, Dr. Van Arsdell cannot compare the data from the test to well-established IARVs. *See* Mot. at 8.  Plaintiff cites no scientific authority or peer-reviewed paper stating that IARVs may ***only*** be used in the very, very rare situation in which a simulated crash's delta-V matches the calibration test's delta-V exactly.  *See cf. Am. Fid. Assurance Co. v. Bank of*

13

*New York Mellon,* No. CIV-11-1284-D, 2018 WL 11425413, at *2 (W.D. Okla. Feb. 28, 2018) (denying motion to exclude the defendant's securitization expert "for lack of an adequate basis" because the plaintiff "has the burden to come forth with an independent basis that supports either the exclusion or limitation"). Thus, Plaintiff's argument goes nowhere because it doesn't give the Court or Toyota any place, *i.e.,* authority, to start.

And in making this argument, Plaintiff fundamentally misunderstands IARVs and how they are used in occupant protection system design and testing. IARVs were developed to evaluate the risk of injury when an ATD is exposed to various forces. *See* Ex. 1, Van Arsdell Decl., ¶ 11. It is widely accepted in the field of occupant protection systems design and testing that the values are independent of impact speed or delta-V. *See id.* ¶ 23. NHTSA recognizes this by using the same IARV's for varying FMVSS test conditions. *Id.* ¶ 23. While IARVs ***can*** differ for different size ATDs, they ***do not*** differ based on crash severity or delta-V. *See id.* ¶ 24. IARVS for adult-sized ATDs are the same whether the ATD is subject to a 25, 30, 35 or 40 mph test. *See id.* In this very case, Ms. Hoffman compares injury metrics from a test to IARVs in Figure 68 of her report, even though the test from which the injury metrics were derived was run at 43 mph. *See* ECF No. 66-16, Hoffman Report, at 83. And Mr. Sicher has published a paper regarding the performance of rear-facing child seats in which he uses IARVs when analyzing injury metrics obtained from testing conducted at 42 mph. *See* (2013) Whitman, G. et al. "Rear-facing Child Safety Seat Performance in Frontal NCAP Level Crashes." ESV 13-0010-W. Therefore, Plaintiff's disagreement with Dr. Van Arsdell misses the mark.

14

Plaintiff next argues that the 3YO Hybrid III ATD utilized in the Rear-Facing Test is not representative of I.R.A., thus invalidating Dr. Van Arsdell's IARV opinion. *See* Mot. at 9-10. Again, missing from the Motion is any argument as to why this disagreement with a test input speaks to the reliability of Dr. Van Arsdell's process or any citation which would allow Toyota to challenge this assertion or the Court to objectively evaluate it. Because Plaintiff does not back up her Motion with any scientific or engineering source, it should be denied. *See Am. Fid. Assurance,* 2018 WL 11425415, at *3.

Additionally, Plaintiff criticizes Dr. Van Arsdell's choice of the 3YO Hybrid III ATD because it ***understates*** injury metrics given that I.R.A. was smaller than the ATD. *See* Mot. at 9. Plaintiff thus admits that the injury metrics derived from the Rear-Facing Test would have been ***higher*** if an ATD existed that exactly matched I.R.A.'s weight and height. This isn't a criticism of the Rear-Facing Test or Dr. Van Arsdell's opinions; it is a bolster.

And Plaintiff's arguments concerning the 3YO Hybrid III ATD are nonstarters because the choice was sound. There are a limited number of ATDs that represent children, and it is almost never possible to perfectly match an ATD to the size of the occupant in question. *See* Ex. 1, Van Arsdell Decl., ¶ 17. As shown by Figure 3 *supra,* the 3YO Hybrid III ATD was closest in height to I.R.A. Rather than accept that the Rear-Facing Test was conducted to evaluate the types of forces experience by a child of ***similar*** size to I.R.A., Plaintiff is insisting on equivalence. But if Plaintiff is Goldilocks and ATDs are porridge, there is no "just right." She criticizes Graco's experts for utilizing the 18MO CRABI ATD because it is too small. *See* ECF No. 71 at 17. She criticizes Toyota for utilizing the 3YO Hybrid III ATD because it is too big. *See* Mot. at 8-9. And all this while Plaintiff's expert

15

relies on testing utilizing a 12MO CRABI ATD, which is smaller even than Graco's choice. *See* ECF No. 66-16, Hoffman Report, at 83.  Based on his engineering judgment, Dr. Van Arsdell selected the 3YO Hybrid III ATD, a choice that just so happens to have been endorsed by Plaintiff's expert.  *See id.* at 75.  Plaintiff is free to attack this choice in cross-examination, but not via Rule 702.

Lastly, Plaintiff argues that a "general IARV exceedance" does not show that if I.R.A. had been rear facing, the "cervical tensile forces causing atlanto-axial distraction" would have occurred.  *See* Mot. at 10-11.  Agreed.  Dr. Van Arsdell is not offering biomechanical opinions in this case and does state in his report that I.R.A. would have suffered the same injury had she been rear facing in the Subject Crash.  *See* Ex. 1, Van Arsdell Decl., ¶ 25; *see generally* Ex. 4, Van Arsdell Report.  All Dr. Van Arsdell opines is that the injury metrics obtained from the Rear-Facing Test, in which a 3YO Hybrid III ATD was placed in a rear-facing exemplar Graco Seat, exceeded some IARVs.  *See* Ex. 4, Van Arsdell Report, ¶ 39.  His opinion has a sound basis and does not stretch beyond his expertise into biomechanics, as Plaintiff's suggests.  Therefore, it should stand.

## II.    The Court Should Deny the Motion Because Dr. Van Arsdell's Opinions Concerning Effective Restraint Meet Rule 702's Requirements

Plaintiff argues that Dr. Van Arsdell's opinions that "I.A.'s size falls within the approved range for both orientations," "either orientation would afford proper protection" and "forward-facing may in some cases produce lower injury metrics than rear-facing" are unreliable and biased.  *See* Mot. at 11 (citing Ex. 4, Van Arsdell Report, at ¶¶ 66, 69).  As

16

with Dr. Van Arsdell's opinion concerning IARVs, these opinions meet all the criteria of Rule 702.

Dr. Van Arsdell's effective restraint opinions are helpful, Fed. R. Evid. 702(a), because they will aid the trier of fact in understanding Toyota's defense that it isn't as simple as "rear facing is best."  The opinions are based on sufficient facts and data, Fed. R. Evid. 702(b), because they are based his review of all of the evidence in this case, *see supra* Section C, particularly his review of the owner's manual for the Graco Seat, Graco's testing of its seat, and his review of publicly available data from NHTSA FMVSS 213 testing.

Dr. Van Arsdell's effective restraint opinions are the product of reliable principles and methods, Fed. R. Evid. 702(c), because there is a logical basis for them.  The Graco Seat had the following stickers on its side, pictures of which are included in Dr. Van Arsdell's report:

 

Ex. 4, Van Arsdell Report, ¶ 6.  The stickers state that a child between five and 40 pounds can utilize the Graco Seat rear facing and that the child between 22 and 65 pounds can

17

utilize the Graco Seat forward facing.  Additionally, the owner's manual for the Graco Seat

contains the following chart, which instructs users that a child between 22 and 40 pounds

"**SHOULD** be rear-facing":



*See* Ex. 7, Arena_Graco 000587.  I.R.A. weighed 26.5 pounds at the time of the Subject

Crash.  So Dr. Van Arsdell's opinion that her size fell within the approved range for both

orientations is sound.

And Dr. Van Arsdell's opinions that rear-facing or forward-facing CRS can afford

proper protection and that, in some cases, a forward-facing seat can result in lower injury

metrics, is also the product of reliable principles and methods.  To come to these opinions,

Dr. Van Arsdell first analyzed publicly available data from some of NHTSA's FMVSS 213

testing.  *See* Ex. 4, Van Arsdell Report, ¶ 66.  He focused on tests run with a 12-month-old

ATD restrained in a convertible CRS because such tests were run "in both the forward-

facing and rear-facing modes," allowing for comparison between the two orientations. *See*

*id.*  In analyzing this data, he found that the average head injury criterion ("HIC") for the

18

ATD placed in forward-facing seats was 438.1, while the average HIC for the ATD for the rear-facing seats was 528:



*See id.* ¶ 67.  Because HIC can be used as a surrogate for forces on the neck, Dr. Van Arsdell reliably opined that, "[i]n some cases, the performance of a child seat in forward-facing mode may result in lower injury metrics as compared to rearward-facing mode." *Id.* ¶ 69.

Plaintiff argues that Dr. Van Arsdell is conflating "two categorically distinct determinations: whether a child is within the manufacturer's size parameters for a given orientation, and whether both orientations provide equivalent protection in a catastrophic frontal crash."  Mot. at 11.  But Plaintiff must not have read Dr. Van Arsdell's opinions carefully, because nowhere in his report does he state that the orientations are "biomechanically equivalent."  *See id.* at 12.  Rather, he has opined that because I.R.A.'s size fell within the rear-facing and forward-facing ranges for the Graco Seat, "either orientation would afford proper protection."  *See* Ex. 4, Van Arsdell Report, at ¶ 64.

19

Plaintiff read into his opinion that either orientation would afford proper protection *in the Subject Crash*.  But that's not what he stated.  As such, there is no misleading conflation in Dr. Van Arsdell's opinion.  His reliable application of facts and data shows that I.R.A. was of a size in which Graco, the manufacturer of the CRS, stated its seat could be used rear-facing or forward-facing, thus providing, in general, proper protection.

Plaintiff next takes issue with Dr. Van Arsdell's review of data to come to his effective restraint opinions, arguing that it is unreliable because of the tests' use of a 12-month-old ATD and because the tests were run at 30 mph.  Mot. at 12.  But the question pursuant to Rule 702 is not whether the data reviewed by Dr. Van Arsdell could have fit better with the facts of the Subject Crash; rather, it is whether Dr. Van Arsdell's process adequately connects that data to his conclusion.  Toyota submits that reviewing data from simulated crashes and then reaching a *general* conclusion based on that data is a sound process, and thus, is not subject to Rule 702 exclusion.

Additionally,  a careful reading of Dr. Van Arsdell's opinion shows that he has not gone as far as Plaintiff argues.  Dr. Van Arsdell did *not* state that I.R.A. would have experienced a lower HIC in forward-facing mode versus if the Graco Seat had been in rear-facing mode.  Rather, he opined: "[i]n some cases, the performance of a child seat in forward-facing mode may result in lower injury metrics as compared to rearward-facing mode." Ex. 4, Van Arsdell Report, ¶ 69.  That is a reliable conclusion from the data he reviewed, where the average HIC with a forward-facing CRS was 438.1 and the average HIC with a rear-facing CRS was 528. One of Plaintiff's presumed arguments to the jury will be: it is well-known an industry standard that a child should ride in a rear-facing CRS

20

as long as possible.    Dr. Van Arsdell's opinion relies on data to provide a general counterpoint to that argument.

Lastly, Plaintiff argues that Dr. Van Arsdell's reliance on his own 2013 paper "carries a [] reliability failure." Mot. a 12. Not so, first because Dr. Van Arsdell doesn't hide that reliance, as Plaintiff's suggest, *see* Ex. 4, Van Arsdell Report, at 34 n.45 (stating that the author of the at-issue paper is "Van Arsdell, W."), and second, because there is nothing in Rule 702 suggesting that an expert cannot rely on previous, non-specific case work in coming to his or her opinions.    Dr. Van Arsdell's peer-reviewed paper shows a methodological process undertaken by him and his co-authors to evaluate and compare the performance of belt-position booster CRSs and CRSs with an integral 5-point harness in frontal and size FMVSS 213 testing.    *See* Van Arsdell, W. *et al.*, "Performance of Belt-Positioning Boosters and 5-point Harness CRSs in Frontal and Side Impacts," SAE 2013-01-1159.    Relying on that paper to support his opinions in this case is not biased or improper: it is science and well-supported by Rule 702.

## III.    The Court Should Deny the Motion Because Dr. Van Arsdell's Opinions Concerning Misuse Meet Rule 702's Requirements

Dr. Van Arsdell's misuse opinions are reliable and confirmed by Plaintiff's own experts in this case.

The opinions are helpful, Fed. R. Evid. 702(a), because the heart of Plaintiff's case against Toyota is that, had the Toyota owner's manual warned her that a child should ride rear-facing as long as possible, she would have heeded the warning.    But this assertion is contradicted by Plaintiff's failure to follow instructions that were included in the Corolla

21

manual, including the instruction to attach the Graco Seat's top tether strap to the top tether anchor of the Corolla. So, Dr. Van Arsdell's opinion that Graco Seat was installed without a tether in violation of the Corolla and Graco Seat's manuals, *see* Ex. 4, Van Arsdell Report, ¶ 40, will aid the jury in resolving a factual dispute between the parties.

The opinions are supported by sufficient facts and data, Fed. R. Evid. 702(b), because Dr. Van Arsdell relied upon his inspection of the Corolla and the Graco Seat, as well as his review of their respective manuals, in reaching his misuse opinions.

The opinion is the product of principles and methods reliably applied to the evidence in this case, Fed. R. Civ. P. 702(c) & (d), because, based on his training and experience, Dr. Van Arsdell inspected the Corolla and Graco Seat and determined that the top tether and SnugLock features were not used by Plaintiff. Plaintiff's experts agree with Dr. Van Arsdell: "The tether on I.A.'s child seat was not fastened at the time of the collision," opines Ms. Hoffman, following by several paragraphs opining that "child seat misuse is a problem with increasing injury rates for children." *See* ECF No. 66-16, Hoffman Report, at 84.

In arguing against introduction of Dr. Van Arsdell's misuse opinions, Plaintiff mischaracterizes them. Contrary to Plaintiff's assertions, Dr. Van Arsdell did not and will not testify that "I.A.'s death resulted from her mother's failure to use the top tether and alleged harness looseness." Mot. at 13. Rather, the paragraphs cited by Plaintiff in her Motion contain the following opinions:

- o ¶ 40 – "The subject CRS was installed without a tether, in violation of both the Toyota owner's manual and the CRS instruction manual."; ¶ 43 (same).

22

- ¶ 44 – "The caregivers failed to properly use the SnugLock feature of the Graco child seat."

- ¶ 47 – " For CRSs to be effective, they must be used correctly, and in the manner recommended by both the manufacturer of the CRS and the manufacturer of the vehicle. As discussed above, I.A. was not properly restrained in her CRS."

As shown by these opinions, Dr. Van Arsdell has only opined that Plaintiff did not utilize the Graco Seat as its manual instructed.  This is the testimony he will offer concerning misuse, and because it is supported by sufficient facts and data reliable applied to the facts of this case, the Court should deny Plaintiff's motion to exclude it.

**CONCLUSION**

For all of these reasons, the Court should deny Plaintiff's Motion.

Respectfully submitted,


*s/ Katie G. Crane*
Mary Quinn Cooper, OBA #11966
Andrew L. Richardson, OBA #16928
Katie G. Crane, OBA #34575
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
maryquinn.cooper@mcafeetaft.com
andrew.richardson@mcafeetaft.com
katie.crane@mcafeetaft.com

Karl Viehman, Texas Bar No. 20579390
NELSON MULLINS RILEY &
SCARBOROUGH LLP
5830 Granite Park, Suite 1000
Plano, Texas 75024
Telephone: (469) 484-6100
karl.viehman@nelsonmullins.com

23

***Attorneys for Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc.***

## CERTIFICATE OF SERVICE

I hereby certified that on the 29th day of May, 2026, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a notice of electronic filing to the ECF registrants based on the records currently on file.

Michael Burrage
Reggie N. Whitten
Randa K. Reeves
Heather Strohmeyer
Dilan A. Lyda
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
rreeves@whittenburragelaw.com
hstrohmeyer@whittenburragelaw.com
dlyda@whittenburragelaw.com

David W. Little
davidwlittle@msn.com

Jeffrey T. Embry
Christopher Peirce
Margaret C. Pennell
jeff@hossleyembry.com
matt@hossleyembry.com
meg@hossleyembry.com
*Attorneys for Plaintiffs*

Cary E. Hiltgen
J. R. "Randy" Baker
Hiltgen & Brewer PC
9505 N. Kelley Ave.
Oklahoma City OK  73131
chilgen@hbokc.law
rbaker@hboke.law

25

Malerie Ma Roddy
Stephen M. Copenhaver
Rachael Anna Bryan
ArentFox Schiff LLP
223 South Wacker Drive, Suite 7100
Chicago, IL  60606
Attorneys for Defendant
Graco Children's Products, Inc.


*s/ Katie G. Crane*

26