# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

VICTORIA ARENA,
Individually, and as next of kin of
I.R.A., a deceased minor,

    Plaintiff,

v.

TOYOTA MOTOR CORPORATION,
a foreign corporation;
TOYOTA MOTOR SALES, U.S.A., INC.,
a Texas corporation, and
GRACO CHILDREN'S PRODUCTS, INC.,
a Delaware corporation,

    Defendants.

Case No. 5:24-cv-01248-D

## TOYOTA MOTOR CORPORATION AND TOYOTA MOTOR SALES, U.S.A., INC.,'S RESPONSE IN SUPPORT OF DEFENDANT GRACO CHILDREN'S PRODUCTS INC.'S MOTION TO EXCLUDE THE SPECIFIC CAUSATION OPINIONS OF LARRY SICHER AND MICHELLE R. HOFFMAN AND BRIEF IN SUPPORT

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota"), file this Response in Support of the Motion to Exclude the Specific Causation Opinions of Larry Sicher and Michelle R. Hoffman and Brief in Support (the "Motion" or "Mot.") filed by Defendant Graco Children's Products, Inc. ("Graco"). Toyota joins all arguments made by Graco in its Motion, and further argues as follows:

## I. Mr. Sicher is Not Qualified to Offer Specific Causation Opinions

As shown by Graco, Plaintiff's restraints expert Mr. Sicher is not qualified to offer specific causation opinions in this case. *See* Mot. at 8-10. In addition to the reasons articulated in the Motion, Mr. Sicher's lack of biomechanic expertise is shown by the qualifications of Toyota's biomechanic, Dr. Elizabeth Raphael, and absence of specific

causation opinions from Dr. William Van Arsdell, Toyota's restraint expert and "equivalent" to Mr. Sicher in this case.

Dr. Elizabeth Raphael – unlike Mr. Sicher – is an expert in the field of biomechanics. She is uniquely qualified to offer opinions about specific injury causation given her degree in engineering from M.I.T., her M.D. from Wayne State University School of Medicine, and her current treatment of patients at the Standford University Hospital Emergency Department. *See* ECF No. 98, Toy.'s Resp. in Opp'n to Pl.'s Mot. to Exclude Dr. Raphael, at 4-5. She routinely provides opinions about injury causation and has been deemed qualified to do so by multiple courts. *See id.* at 2, 4-5. Her qualifications highlight those missing from Mr. Sicher's resume, *i.e.,* any education or experience that would allow him to opine how I.R.A. sustained her fatal C2 fracture and dislocation.

Ms. Sicher's lack of qualification to offer specific causation opinions is also shown by the opinions offered by Dr. Van Arsdell, Toyota's restraints expert. Dr. Van Arsdell, like Mr. Sicher, is an engineer with experience evaluating restraints, and is thus qualified to offer opinions about them. However, Dr. Van Arsdell, again like Mr. Sicher, is not qualified to offer opinions about how those restraints result in specific injuries to occupants in specific crashes. Consistent with his qualifications, Dr. Van Arsdell stays in his lane in his report, declining to offer any biomechanical opinions about any injuries that I.R.A. may have sustained if the Graco Trio-Grow 3-and-1 (the "Graco Seat") had been rear facing in the April 21, 2024, crash that is the subject of this lawsuit (the "Subject Crash"). *See* ECF No. 97-1, Van Arsdell Decl., ¶ 25. Mr. Sicher, on the other hand, does no such thing. Mr. Sicher's definitive opinion that had I.R.A. "been properly restrained in a rear-facing CRS,

2

she would not have sustained her fatal head and neck injuries," is out of his depth because biomechanical expertise, *e.g.,* an understanding of human anatomy and how forces act on that anatomy, is required to offer such an opinion. *See* ECF No. 68-7, Sicher Report, at 22. If Mr. Sicher isn't qualified to, and therefore doesn't, opine on how I.R.A. sustained her fatal C2 fracture and dislocation in the Subject Crash, then he isn't qualified to opine about whether she would have sustained the same injuries if the Graco Seat had been oriented differently in the Subject Crash.

**II. If the Court finds Mr. Sicher is Qualified, His Specific Injury Causation Opinions Should Still Be Excluded Because They Are Not Adequately Supported**

To support his opinion that "[h]ad [I.R.A.] been properly restrained in a rear-facing CRS, she would not have sustained her fatal head and neck injuries," Mr. Sicher relies upon: (1) "review of frontal crash sled testing of the TrioGrow CRS and other forward-facing 5-point CRSs;" (2) "laws of physics;" and (3) "consultation with biomechanical expert Michelle R. Hoffman." *See id.* at 21. For all of the reasons detailed by Graco, these are insufficient grounds by which an expert can render specific causation opinions. *See* Mot. at 11-17. Additionally and obviously, reviewing testing of ***forward-facing*** 5-point CRSs is not grounds for offering an opinion about specific injuries that would result from a ***rear-facing*** 5-point CRS.

Nowhere in Mr. Sicher's report does he mention the tests run by his employer, ARCCA, in February 2023 (the "ARCCA tests"). In his rebuttal report, he states as follows:

> The ARCCA tests address the question of differential performance between configurations, which is invariant under modest delta-V changes within the survivable range. If a rear-facing CRS produces dramatically lower injury metrics than a forward-facing CRS at 43 mph delta-V, the same comparative relationship—rear-facing producing dramatically lower injury metrics than forward-facing—holds at 49 mph delta-V.

*See* Ex. 1, Sicher Rebuttal, at 14. Thus, if relying on the ARCCA tests at all, Mr. Sicher is doing so for a general proposition, and such reliance is not contested by Toyota with this Response in Support. Rather, as his report suggests, Mr. Sicher is deferring to Ms. Hoffman's analysis of the ARCCA tests in support of his specific causation opinions. *See* ECF No. 68-7, Sicher Report, at 21. And merely restating Ms. Hoffman's opinions is insufficient to claim them as his own. *See* Mot. at 10.

And if Mr. Sicher did conduct an in-depth review of the ARCCA tests and is relying on them to support his specific causation opinions even though he did not disclose that we was doing so in his initial or rebuttal reports, the problem with his "differential performance" argument is twofold.

*First,* comparisons are irrelevant if a CRS placed forward facing in a vehicle resulted in death and a CRS placed rear facing in a vehicle would result in likely serious injury or death. Based on the neck tension result of 1690.7 N in the Rear-Facing Test, Dr. Raphael opined that "more likely than not, IA would have sustained a similar spinal injury even if she had been restrained rear facing in the subject collision." *See* ECF No. 98-4, Raphael Report, at 15. All Mr. Sicher's reasoning shows is that, had the Rear-Facing Test been run with a forward-facing CRS, then the neck tension result would have been higher

than 1690.7 N.  Such an opinion says ***nothing*** about what injury I.R.A. would have sustained had she been rear facing.

Additionally, his "differential performance" opinion is the precise "because I said so" methodology insufficient to establish Rule 702 reliability.  Mr. Sicher states that in the ARCCA tests, the rear-facing CRS produced "lower injury metrics" than the forward-facing CRS.  True.  But how does he get from that result to the proposition that, in this case, I.R.A. would not have suffered a C2 fracture and dislocation? His report and rebuttal do not provide that explanation, and such methodological failure should result in the Court granting the narrow relief requested by Graco in its Motion.  *See* Mot. at 11-14.

## III.  Ms. Hoffman's Grounds for Her Specific Injury Causation Opinions Are Not Sound

While on first blush it may appear that Ms. Hoffman's specific causation opinion is reliable for the same reason that Dr. Raphael's specific causation opinion is reliable, *i.e.,* reliance on testing, a deeper dive reveals an analytical gap in Ms. Hoffman's opinion not present in Dr. Raphael's.

The ARCCA tests were conducted for a case captioned *Kelly L. Pereira v. Dorel Juvenile Group, Inc., et al.,* which in February 2023, was pending in Rhode Island Superior Court.  *See* Ex. 2, Hoffman Pereira Report.  *Pereira* concerned a single vehicle car crash that occurred on October 28, 2018, in Warren, Rhode Island.  *See id.* at 3.  The plaintiff's son, a 13-month-old child (the "Pereira Child"), was seated in a Safety 1st Grow and Go convertible car seat (the "Safety 1st Seat") placed forward-facing in a 2018 Hyundai Sonata.  *Id.* at 4.  The Pereira Child's father fell asleep while driving.  *Id.*  The Sonata swerved off

the road, struck a utility pole, and then collided with a tree. *Id.* The Pereira Child suffered serious traumatic brain and cervical-spine injuries because of the crash. *Id.* at 69-70.

Ms. Hoffman was the biomechanical expert hired by the plaintiff in *Pereira.* In her report for that case, she wrote:

> That a forward-facing orientation led to [the Pereira Child's] catastrophic injuries and that a rear-facing orientation would have eliminated any serious injury is supported by sled tests conducted at ARCCA. The testing was conducted to simulate a 43-mph delta V with a 36 g peak over 115 ms. Three tests were conducted: 1) forward-facing without a tether, 2) rearward-facing, and 3) forward-facing with a tether. All head and neck injury measures were below injury assessment reference values (IARVs) in the rear-facing test. HIC, neck tension, and Ntf all exceeded the IARVs in the forward-facing test, and these same values were even higher in the forward-facing test with a tether. See Figure 49. This is likely because the rear head restraint was integrated, so as the tether tightened over the cushioned head restraint, it stopped suddenly rather than providing ride down.

| | Head # | t1 | HIC36 | t1 | t2 | HIC15 | t1 | t2 | Neck Fz (T) | t1 | Neck My(+) | t1 | Neck My | t1 | Ntf | t1 | Nte | t1 | Ncf | t1 | Ncc | t1 | Chest R | t1 | SOLP | t1 | t2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | G | ms | | ms | ms | | ms | ms | N | ms | Nm | ms | Nm | ms | | ms | | ms | | ms | | ms | G | ms | | ms | ms |
| 101 FFUT | 84.9 | 80.6 | 1232.9 | 68.6 | 104.6 | 797.5 | 76.5 | 91.5 | 2130.5 | 81.1 | 12.6 | 234.0 | -1.0 | 144.9 | 1.64 | 81.3 | 0.26 | 166.5 | 0.35 | 241.6 | 0.13 | 390.7 | 56.9 | 86.9 | 53.0 | 86.2 | 88.2 |
| 102 RF | 106.0 | 56.0 | 749.7 | 51.6 | 87.6 | 691.6 | 51.8 | 61.3 | 519.6 | 57.5 | 11.7 | 60.1 | -10.9 | 293.0 | 0.62 | 59.0 | 0.31 | 52.7 | 0.22 | 279.1 | 0.97 | 290.3 | 67.4 | 61.3 | 62.5 | 55.7 | 55.7 |
| 103 FFT | 101.6 | 80.3 | 1364.6 | 68.3 | 96.3 | 1143.8 | 74.3 | 89.3 | 2533.4 | 79.5 | 12.1 | 80.0 | 2.3 | 141.9 | 2.08 | 79.8 | 0.19 | 142.1 | 0.20 | 245.8 | 0.02 | 300.0 | 62.3 | 81.5 | 58.1 | 76.9 | 79.9 |

*NHTSA's 3msd ip software resampled data to the required 0.1 ms sampling rate (instead of 0.05ms)
NHTSA's Nij software - Nij "version 10"used oral applied occipital condyle correction;
CRABI-12 month ATD critical values used: Ft = 1460; Fc =1490 N, Flexion = 43, Extension =37, Tension/Compression Limits: 780 and -960

*Id.* at 76.

Compare that to her specific causation injury opinions in this case:

> That a forward-facing orientation led to I.A.'s catastrophic injuries and that a rear-facing orientation would have eliminated any serious injury is supported by sled tests conducted by ARCCA in February of 2023. The testing was conducted to simulate a 43-mph delta V with a 36 g peak over 115 ms. Three tests were conducted: 1) forward-facing without a tether, 2) rearward facing, and 3) forward-facing with a tether. All head and neck injury measures were below injury assessment reference values (IARVs) in the rear-facing test. HIC, neck tension, and Ntf all exceeded the IARVs in the forward-facing test, and these same values were even higher in the forward-facing test with a tether. See Figure 68.46. This increase in IARVs with a tether

was likely due to the fact that the vehicle's rear head restraint was integrated, so as the tether tightened over the cushioned head restraint, it stopped suddenly rather than providing ride down.

| | Head # G | t1 ms | HIC36 | t1 ms | t2 ms | HIC15 | t1 ms | t2 ms | Neck Fz (f) N | t1 ms | Neck Mr(+) Nm | t2 ms | Neck My Nm | t1 ms | Ncf | t1 ms | Nte | t1 ms | Ncf | t1 ms | Ncc | t1 ms | Chest R G | t1 ms | 3CLP | t1 ms | t2 ms |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 FFUT | 84.9 | 80.6 | 1292.9 | 68.6 | 104.6 | 797.5 | 76.5 | 91.5 | 2130.5 | 81.1 | 12.6 | 234.0 | -3.0 | 144.9 | 1.64 | 81.3 | 0.26 | 146.5 | 0.35 | 241.6 | 0.12 | 290.7 | 56.9 | 86.9 | 53.0 | 86.2 | 88.2 |
| 102 FF | 106.0 | 56.0 | 743.7 | 51.6 | 87.6 | 631.6 | 51.8 | 61.5 | 535.6 | 57.5 | 11.7 | 60.1 | -10.9 | 293.0 | 0.62 | 59.0 | 0.31 | 52.7 | 0.22 | 279.1 | 0.97 | 280.3 | 67.4 | 61.3 | 62.5 | 55.7 | 59.7 |
| 103 FFT | 101.6 | 80.3 | 1364.6 | 68.3 | 96.3 | 1141.8 | 74.3 | 89.3 | 2539.4 | 79.5 | 12.1 | 80.0 | 2.3 | 141.9 | 2.08 | 79.8 | 0.19 | 142.1 | 0.20 | 245.8 | 0.02 | 300.0 | 62.3 | 81.5 | 58.1 | 76.9 | 79.9 |

*NHTSA's 3msd io software resampled data to the required 0.1 ms sampling rate (instead of 0.05ms)*
*NHTSA's NIJ software - Nij "version 10"used and applied occipital condyle correction;*
*CRABI-12 month ATD critical values used. Ft = 1460; Fc =1490 N, Flexion = 43, Extension =17, Tension/Compression Limits: 780 and -960*

*See* ECF No. 68-6, Hoffman Report, at 83. The only substantive difference in the two opinions is the replacement of the Pereira Child's name for I.R.A.'s.

The forces at play in the ARCCA tests were different than those in the April 1, 2026, sled test conducted at the Center for Advanced Product Evaluation by Engineering Principles for Toyota (the "Rear-Facing Test"):

| | ARCCA tests | Toyota's Rear-Facing Test |
|---|---|---|
| Delta-v | 43 mph | 49 mph |
| Peaks Gs | 36 gs | 43 gs |
| Pulse duration | 115 ms | 120 ms |
| Pulse peak | 60 ms | 50 ms |
| PDOF | 0 | -10 degrees |

*See* Ex. 3, Pereira Sled Test Plan, at 1; *see generally* ECF No. 72-1, Duran Report. Dr. Van Arsdell illustrated the differences in peak gs, pulse duration, and pulse peak in the below chart included in his report:



*See* ECF No. 97-4, Van Arsdell Report, ¶ 36.  Additionally, the CRS utilized in the ARCCA

tests was an exemplar Safety 1st Seat, the CRS in which the Pereira Child was seated, while

the car seat utilized in the Rear-Facing Test was an exemplar Graco Seat:

| Safety 1st Grow and Go All-in-One Convertible Car Seat | Graco Seat |
|---|---|
|  | |
| 24 inches (H) x 19 inches (W) x 24 inches (D)[1] | 23.25 inches (H) x 19 inches (W) x 20 inches (D)[2] |

---

[1] Specifications found at https://www.target.com/p/safety-1st-grow-and-go-3-in-1-convertible-car-seat-shadow/-/A-75557094.

[2] Specifications found at https://www.gracobaby.com/shop/car-seats/toddler-car-seats/all-in-one-car-seats/triogrow-snuglock-3-in-1-car-seat/SAP_2214634.html.

Notably, the Safety 1ˢᵗ seat is 4 inches deeper than the Graco Seat, which means it sits closer to a passenger seat when installed in the rear seat of a vehicle. Pictures from the ARCCA tests demonstrate that there was about an inch between the back of the Safety 1ˢᵗ seat and the back of the passenger seat in the rear-facing ARCCA test:



One of the contentions in Plaintiff's Rule 702 motions concerns the gap between the back of a CRS and the passenger seat. Plaintiff argues that a smaller gap produces lower injury metrics than a larger gap. *See, e.g.,* ECF No. 70 at 9; ECF No. 71, Pl.'s Mot. to Exclude Sochor, at 7 ("That gap is the variable that controls the outcome."). The size of the CRS at issue in the ARCCA tests meant that the gap was small, and therefore, at least according to Plaintiff, that any injury metrics obtained from the rear-facing ARCCA test were lower.

Another difference in the ARCCA tests is the exemplar vehicle utilized. The ARCCA tests were conducted with a 2018 Hyundai Sonata buck, while the Rear-Facing Test utilized a 2021 Toyota Corolla buck. Obviously, the vehicles and their exemplars are different:

9

 

2018 Hyundai Sonata Buck                    2021 Toyota Corolla Buck

Plaintiff would be the first to agree that it matters whether the conditions of a test match the conditions of a crash. *See* ECF No. 71, Pl.s' Mot. to Exclude Sochor, at 10-11 (arguing that Dr. Sochor's opinions derived for Graco's sled test should be excluded because the crash pulse duration utilized in the test was different than the crash pulse duration of the Subject Crash). When the conditions of a test do not match the conditions of a crash, Rule 702 requires the expert to explain how they got from A (a dissimilar test) to B (a specific causation opinion). For example, did Ms. Hoffman note the differences between a Sonata and a Corolla, like the space between the back of each vehicles' passenger seats and rear seats? Did she account for the fact that the Safety 1st Seat is deeper than the Graco Seat and therefore sits closer to the back of a passenger seat? Did she run calculations to account for any increased injury metrics that would necessarily result from a crash that had a 30% more force than the Periera crash? There is no indication from her report or rebuttal that Ms. Hoffman did any such methodological confirmation. And to the extent that Mr. Sicher attempts to do the explaining for her, as shown *supra,* all Mr. Sicher's reasoning illustrates is the general principle that injury metrics can be higher in a frontal

10

collision when an ATD is placed in forward-facing seat than in a frontal collision when an ATD is placed in a rear-facing seat.

Had Ms. Hoffman's opinion stopped at the general principle described by Mr. Sicher, then there would be no need for Graco's Motion or this Response in Support of it. But Ms. Hoffman goes further, relying on the test for the proposition that "that a rear-facing orientation would have eliminated any serious injury" to I.R.A. *See* ECF No. 68-6, Hoffman Report, at 83. But in her rebuttal report, Ms. Hoffman ***agrees*** that the ARCCA tests illustrate a general, not specific, principle:

> The testing I relied on demonstrated clearly the large difference in HIC 15 and in neck tension for a forward-facing and a rear-ward facing scenario – something Dr. Raphael's testing failed to do. The ARCCA testing showed that for a forward-facing child with a tether, the HIC 15 was 1.8 times greater (633 vs 1144) and neck tension was 4.9 times greater (515.6 vs 2533.4) than a rear-ward facing child.

*See* Ex. 4, Hoffman Rebuttal Report, at 5. To opine that I.R.A. would not have suffered any serious injury had she been rear facing in a crash that is in the 99th percentile of all frontal crashes, Ms. Hoffman needed to do more than simply copy her work from another case and paste it into this one. Because she has not provided any explanation of how injury metrics from tests simulating a different crash can be used to offer a specific causation opinion in this case, her process is not sound. *See* Mot. at 16-18.

Graco and Toyota's criticisms of Ms. Hoffman ***do not*** go to the weight of her testimony; they go to her process. Because she has not adequately established the grounds for which she opines that the results of a dissimilar test can be applied to this case, her specific causation opinions are not reliable. *See* Fed. R. Evid. 702.

**CONCLUSION**

For the foregoing reasons and those detailed in Graco's Motion, the Court should preclude Ms. Hoffman and Mr. Sicher from offering any specific causation opinion testimony that I.R.A. would not have sustained any significant injury in the Subject Crash had she been rear facing.

Respectfully submitted,

s/ Katie G. Crane
Mary Quinn Cooper, OBA #11966
Andrew L. Richardson, OBA #16928
Katie G. Crane, OBA #34575
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
maryquinn.cooper@mcafeetaft.com
andrew.richardson@mcafeetaft.com
katie.crane@mcafeetaft.com

Karl Viehman, Texas Bar No. 20579390
NELSON MULLINS RILEY &
SCARBOROUGH LLP
5830 Granite Park, Suite 1000
Plano, Texas 75024
Telephone: (469) 484-6100
karl.viehman@nelsonmullins.com

***Attorneys for Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc.***

# <u>CERTIFICATE OF SERVICE</u>

I hereby certified that on the 29th day of May, 2026, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a notice of electronic filing to the ECF registrants based on the records currently on file.

Michael Burrage
Reggie N. Whitten
Randa K. Reeves
Heather Strohmeyer
Dilan A. Lyda
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
rreeves@whittenburragelaw.com
hstrohmeyer@whittenburragelaw.com
dlyda@whittenburragelaw.com

David W. Little
davidwlittle@msn.com

Jeffrey T. Embry
Christopher Peirce
Margaret C. Pennell
jeff@hossleyembry.com
matt@hossleyembry.com
meg@hossleyembry.com
***Attorneys for Plaintiffs***

Cary E. Hiltgen
J. R. "Randy" Baker
Hiltgen & Brewer PC
9505 N. Kelley Ave.
Oklahoma City OK  73131
chilgen@hbokc.law
rbaker@hboke.law

Malerie Ma Roddy
Stephen M. Copenhaver
Rachael Anna Bryan
ArentFox Schiff LLP
223 South Wacker Drive, Suite 7100
Chicago, IL 60606
Attorneys for Defendant
Graco Children's Products, Inc.

*s/ Katie G. Crane*