**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| VICTORIA ARENA, Individually and as next of kin of I.R.A., a deceased minor,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, a foreign corporation, TOYOTA MOTOR SALES U.S.A., INC., a Texas Corporation, and GRACO CHILDREN'S PRODUCTS, INC., a Delaware Corporation,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. CIV-5:24-1248-D |

**<u>PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE THE UNTIMELY SUPPLEMENTAL EXPERT REPORTS OF ELIZABETH RAPHAEL, M.D., AND WILLIAM VAN ARSDELL, PH.D., P.E., AND TO EXCLUDE THE JULY 10, 2026 SLED TEST [DOC. NO. 109]</u>**

## INTRODUCTION

Toyota's response confirms why the supplemental reports should be stricken. It says a court is likely to strike a report disclosed after the expert's deposition or offering an opinion that could have appeared in the initial report. [Doc. No. 110 at 19-20]. Dr. Van Arsdell's supplement was served four days after his deposition. Both reports also add material that could have been included earlier. Toyota calls them "the same conclusion, with additional support." [Id. at 16-17]. Additional support is not a Rule 26(e) correction. And Toyota says the braced-condition test was "not at all contemplated, let alone possible" until the June depositions. [Id. at 19]. But before Toyota's April 3 report deadline, Ms. Hoffman's initial report, on the very page Toyota cites, said the child seat likely would have been "in a braced condition" if used rear-facing. [Doc. No. 68-6 at 84; Doc. No. 110 at 11].

The relevant chronology is undisputed. The Court set April 3 for Toyota's reports and April 6 for Rule 702 motions. [Doc. No. 51 at 1–2]. Toyota tested on July 10, produced raw test data on July 20, and served the experts' interpretations on July 26 and 27, without seeking leave. Yet the response says Plaintiff "fails to inform the Court" of the July 20 production. [Doc. No. 110 at 4]. The Motion states that fact twice. [Doc. No. 109 at 4, 10]. Toyota's argument treats as equivalent several different things: a raw expert file into a complete Rule 26 report; deposition testimony into a Rule 26(a)(2) disclosure; and open general discovery into an extension of expired expert-report and Rule 702 deadlines. The Rules address those matters separately.

## I. THE WRITTEN RECORD, NOT THE JUNE DEPOSITIONS, SUPPLIED THE TESTING PREMISE.

Toyota had the braced-condition theory twice in writing. First, Ms. Hoffman's March report discussed gap, touch, and brace testing and concluded that, based on the case-specific fit check, "with all else equal, I.A. child seat would have likely been in a braced condition in the rear-facing orientation." [Doc. No. 68-6 at 84]. Toyota received that disclosure before selecting and running its April 1 test. [Doc. No. 110 at 6-7]. Its response cites the same report and page, yet later says Toyota did not know by April 3 that Plaintiff would criticize the gap and could not even contemplate a braced test. [Id. at 15-19]. The cited record says otherwise.

Second, Ms. Hoffman's May 3 rebuttal made the proposed experiment express: "Dr. Raphael could also have tested a rear-facing child restraint in a touching or braced condition." [Doc. No. 110-2 at 10]. It quantified the predicted effect on both head and neck measures. [Id.]. Toyota itself describes the July experiment as "identical to the first save the position of the Corolla's passenger seat." [Doc. No. 110 at 11-12]. Toyota's own description does not show the test was previously impossible. The June depositions explored the disclosed opinion; they did not first identify it.

Toyota's timing argument therefore fails even on its own terms. With no court-set rebuttal date, Rule 26(a)(2)(D)(ii) measures thirty days from "the other party's disclosure," not from a later deposition. A deposition is not that disclosure and starts no new clock. Even assuming Toyota could answer Plaintiff's rebuttal without first obtaining leave for sur-rebuttal, the May 3 disclosure made June 2 the outside date. The July 10 test followed

thirty-eight days later; the reports followed fifty-four and fifty-five days later. Toyota's calculation that it was only four, or eleven, days late starts from the June 16 deposition. [Doc. No. 110 at 21]. Rule 26 does not measure from that date. If the July work answered the May report, it missed the default window; if it answered deposition questions, no Rule 26 deadline restarted. Either characterization required leave.

## II. THE JULY REPORTS ARE NEW EXPERT WORK, NOT RULE 26(e) SUPPLEMENTS.

A retained expert's report must contain "a complete statement of all opinions" and "the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26(e) then requires a timely correction when the party learns that a disclosure is materially incomplete or incorrect and the corrective information has not otherwise been made known. Fed. R. Civ. P. 26(e)(1)(A), (2). It does not permit additional support for an otherwise complete and correct opinion after the report deadline.

Toyota's lead authority recognizes the same distinction. *ONEOK Rockies Midstream, L.L.C. v. Great Plains Technical Services, Inc.* warned that supplementation is not "an invitation to substantially change or bolster opinions," and that a litigant may not mistake the supplementation deadline for the deadline for its experts' final opinions. No. 20-CV-580-CVE-SH, 2021 WL 5851446, at *2, *4 (N.D. Okla. Dec. 9, 2021). The one-page Clark supplement Toyota invokes added later facts supplied by others without new expert work or opinions. Id. at *5. The same court excluded other reports that strengthened conclusions with new analysis, notwithstanding continuing discovery and lack of bad faith.

Id. at *7–9. Toyota's experts did not receive a fact controlled by Plaintiff. Toyota commissioned a new physical experiment, then interpreted and defended it.

The reports contain additional expert work. Dr. Raphael added a new 2,022.3-newton neck-tension measurement, placed it "well beyond the 99th percentile" on an injury-risk curve, and said it "further corroborates" her April conclusion, while confirming that her opinions "remain unchanged." [Doc. No. 109-2 at 2]. If the opinions remain unchanged, the report corrects no inaccuracy or omission. "Further corroboration" is additional support.

Dr. Van Arsdell's report adds still more material. His post-deposition report says its purpose is to document the second test's "results and opinions" and to address issues discussed during his July 23 deposition. [Doc. No. 109-4 at 1]. It criticizes Plaintiff's exemplar, model, leveling, and trim; adds answers concerning the upper-neck load cell and dummy; and supplies new calibration, accreditation, and methodology defenses. [Id. at 3, 5–8]. Toyota says the supplements do not answer Plaintiff's Rule 702 arguments. [Doc. No. 110 at 19]. But Plaintiff's motion challenges the dummy's biofidelity, the injury criteria, and the missing validation [Doc. No. 73 at 7–9], and paragraphs 8–18 of the supplement answer those very matters. Dr. Van Arsdell identifies no inaccuracy to correct. He instead adds methodology defenses and new criticisms prompted by completed cross-examination. That is post-deposition expert analysis, not corrective supplementation. None of those expert positions was disclosed by raw data. Rule 26 recognizes the sequence Toyota reversed: an expert's deposition "may be conducted only after the report is provided." Fed. R. Civ. P. 26(b)(4)(A).

Toyota's response itself states that courts are likely to strike a report served after its author's deposition. [Doc. No. 110 at 19-20]. That describes Dr. Van Arsdell's report. If the July reports add nothing to Toyota's April case, striking them costs Toyota nothing. If they add something Toyota values, that material basis, analysis, or opinion had to be disclosed on time. Rule 26(e) does not permit new support to be added indefinitely after the report deadline.

## III. THE FILE-EXCHANGE AGREEMENT DID NOT MODIFY THE COURT'S DEADLINES.

The file-exchange agreement does not support Toyota's position. Its filed exhibit contains one operative sentence: "We also agree to Andy's proposal to provide expert files three days prior to the expert's deposition." [Doc. No. 110-1 at 1]. Even assuming the proposal was accepted exactly as Toyota says, an agreement about when to exchange files is not an agreement to create new tests, serve new reports, or extend a court deadline. Plaintiff timely disclosed her experts' opinions and later exchanged the underlying ARCCA files. Toyota created the July test **ninety-eight** days after its report deadline. Those are not equivalent positions.

The parties also could not amend the Court's schedule by agreement alone. A discovery stipulation requires court approval if it would interfere with the time set for completing discovery or hearing a motion. Fed. R. Civ. P. 29(b). And a scheduling deadline "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Court set April 3 for Toyota's reports and April 6 for dispositive and Rule 702 motions. [Doc. No. 51 at 1–2]. Its later order extended only the general discovery

cutoff and stayed specified, still-unexpired pretrial dates. [Doc. No. 88 at 1–2]. It did not reopen the expired report or motion deadlines.

Toyota never asked the Court to do so, and its response never addresses Rule 16. Good cause requires a showing that the deadline could not be met despite diligent efforts. *Gorsuch, Ltd., B.C. v. Wells Fargo National Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 988–89 (10th Cir. 2019). A theory disclosed in March and repeated expressly on May 3 cannot support such a showing. Waiting sixty-eight more days to test, and serving opinions later still, reflects a decision to do additional work after the deadline, not an inability to meet it.

## IV. TOYOTA'S AUTHORITIES SUPPORT ENFORCING THE DISCLOSURE SEQUENCE.

Toyota says *Harris v. Remington Arms Co.* "did not involve any testing" and calls Plaintiff's contrary statement unfounded. [Doc. No. 110 at 16]. The cited opinion expressly discusses delayed testing. The expert "could have tested the effect of Molykote, but he didn't do so until after Remington's expert witness had testified," and the district court could fault him for "waiting too long to test." 997 F.3d 1107, 1113 (10th Cir. 2021). *Harris* also held that access to the underlying material did not eliminate prejudice because the opponent had no reason to anticipate the expert's later use of it. Id. at 1112–13. It further held that the proposed cures would fail even absent forfeiture. Id. at 1113. The expert there changed his causal explanation, but the decision's testing, timing, and prejudice holdings answer Toyota's raw-data and re-deposition theories.

Other authorities apply the same principle. *Spirit AeroSystems, Inc. v. SPS Technologies, LLC* excluded post-deadline testing even though the report preceded the expert's deposition, preceded the general discovery cutoff, and would disrupt no set trial. No. 09-1144-EFM-KGG, 2013 WL 6196314, at *6–8 (D. Kan. Nov. 27, 2013). The court rejected more discovery because a lack of diligence does not make available information "unavailable." Id. at *6-8. And in *Poole v. Milwaukee Electric Tool Corp.*, this Court refused to reopen expired deadlines even though no trial date was set: "The orderly conduct of litigation demands that expert opinions reach closure." No. CIV-05-950-D, 2007 WL 7024595, at *3 & n.6 (W.D. Okla. Sept. 28, 2007).

Toyota's cases involved materially different circumstances. *103 Investors I, L.P. v. Square D Co.* corrected an impossible order requiring rebuttal before the report to be rebutted. 372 F.3d 1213, 1216–18 (10th Cir. 2004). *West v. Burch* involved initial reports about two weeks late but before agreed depositions, and observed that requesting an extension would have avoided the dispute. No. CIV-03-1019-T, 2006 WL 8436114, at *1–3 & n.1 (W.D. Okla. Mar. 17, 2006). *In re Commercial Financial Services, Inc.* found no violation because the supplement met the actual expert deadline, with seven weeks of discovery left; it never reached Rule 37. No. 98-05162-R, 2005 WL 6499289, at *9–13 (Bankr. N.D. Okla. May 19, 2005). None authorizes post-deadline testing without leave.

## V. THE JULY MATERIAL IS NOT HARMLESS, AND EXCLUSION IS NARROW AND PROPORTIONATE.

Toyota says Plaintiff cites no authority for excluding the test. [Doc. No. 110 at 19]. Rule 37(c)(1) supplies the applicable authority. Rule 37(c)(1) bars a party from using

undisclosed "information or [a] witness to supply evidence on a motion, at a hearing, or at a trial" unless the violation was substantially justified or harmless. The familiar factors are prejudice or surprise, ability to cure, trial disruption, and bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Those factors favor exclusion here.

First, the prejudice is disruption of the expert-disclosure sequence, not lack of notice that a test occurred. The April 6 Rule 702 deadline passed; the parties briefed dispositive and expert challenges; Dr. Van Arsdell was deposed without his report; and Dr. Raphael received a Sunday-night report for a Wednesday deposition. Toyota then sent corrected test reports on July 28, after Dr. Van Arsdell's deposition. [Doc. No. 110-4 at 2]. General discovery remained open only until August 3. A fair response to a new physical test may require expert review, countertesting, responsive reports, test-specific depositions, and Rule 702 briefing. Raw data three days before a deposition does not restore any of that.

Second, repeating one deposition does not cure the problem. A complete cure would restore the expert-disclosure sequence Toyota bypassed. *Leviton Manufacturing Co. v. Nicor, Inc.* rejected the premise that a court must abandon its schedule merely because considerable effort, reimbursement, and rebriefing might eliminate prejudice. 245 F.R.D. 524, 529–32 (D.N.M. 2007). Toyota's citation to *Gaines v. City of Moore* likewise understates the cure this Court imposed there: the Court denied pending summary-judgment motions without prejudice, reopened discovery for sixty days, required a new dispositive/Daubert schedule, struck the witness list, and shifted motion and deposition expenses. No. CIV-20-851-D, 2023 WL 8704740, at *3–5 (W.D. Okla. Dec. 15, 2023).

Those measures are a substantial cure, not harmlessness. Exclusion here is far narrower because Toyota insists its timely April opinions remain unchanged.

Third, no trial date is set, so that factor viewed in isolation favors Toyota. But it does not erase prejudice to pending motions and completed expert work. Rule 37 expressly protects use "on a motion." And *Poole* and *Spirit* excluded late expert work without a trial date because reopening the technical record would disrupt pretrial preparation. The case lacks a trial date because the Court stayed still-unexpired deadlines pending merits rulings, not because the expert record remained open.

Fourth, bad faith is not required. Plaintiff does not claim Toyota hid the July 20 production. Toyota had the braced theory in March, an express testing proposal on May 3, waited until July 10 to test, and then served both reports without permission, one after its author's deposition. *Spirit* treated comparable choices as willful even absent bad faith. 2013 WL 6196314, at *8. And contrary to the response, the Motion did address willfulness. [Doc. No. 109 at 11–12; Doc. No. 110 at 27].

The exhibit list does not permit use of the July test. Rule 37(c)(1) covers undisclosed "information," not just the paper report. Toyota knew how to identify testing: its April exhibit list specifically named the April 1 test data, photographs, and video. [Doc. No. 80 at 8]. It separately listed Dr. Van Arsdell's file and, elsewhere on the list, a catchall for expert-file materials. [Id. at 10, 53]. It identifies no supplemental list naming the July 10 test. A general expert-file reference cannot disclose an experiment not yet run or replace Rule 26(a)(2)(B)'s complete report of the opinions and bases through which the test will be used.

## CONCLUSION

Toyota's response does not establish that the July reports were timely or proper Rule 26(e) supplements. The file agreement did not amend the schedule, and Rule 26(e) does not permit new support indefinitely after the report deadline. The Court should grant Plaintiff's Motion [Doc. No. 109], strike Dr. Raphael's July 23 and Dr. Van Arsdell's July 27 supplemental reports, and preclude Toyota from using the July 10 test or opinions derived from it through those experts on any pending motion, at a hearing, or at trial. No other expert should be permitted to adopt the late material absent a Rule 16(b)(4) motion and leave of Court.

If the Court instead permits any part of the July material, Plaintiff requests the full cure Toyota's own authorities require: immediate production of the complete test file; leave for responsive expert work and testing; new reports and depositions at Toyota's expense; a test-specific Rule 702 schedule and appropriate reset of affected motions; reasonable expenses under Rule 37(c)(1)(A); and an order requiring leave before any further expert disclosure.

Respectfully submitted,

*/s/ Jeffrey T. Embry*
Reggie N. Whitten, OBA # 9576
Michael Burrage, OBA # 1350
Randa K. Reeves, OBA # 30695
Heather Strohmeyer, OBA # 30745
Dilan A. Lyda, OBA # 34710
WHITTEN BURRAGE
512 N. Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859

rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
rreeves@whittenburragelaw.com
hstrohmeyer@whittenburragelaw.com
dlyda@whittenburragelaw.com

-and-

David W. Little, OBA # 14407
LAW OFFICES OF DAVID LITTLE, PC
115 E. California Ave.
Oklahoma City, OK 73104
(405) 236-4200 Telephone
(405) 236-4205 Fax
davidwlittle@msn.com

-and-

Jeffrey T. Embry
State Bar No. 24002052
jeff@hossleyembry.com
Christopher Peirce
State Bar No. 24046604
cpeirce@hossleyembry.com
Margaret C. Pennell
State Bar No. 24116893
meg@hossleyembry.com
HOSSLEY EMBRY, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Phone: 903-526-1772

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

*/s/ Jeffrey T. Embry*
Jeffrey T. Embry